**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| **ELIZABETH M. RAMANI**<br>13504 Champions Way<br>Germantown, Maryland 20874<br>(Montgomery County, Maryland)<br><br>*Plaintiff,*<br><br>v.<br><br>**GENESIS HEALTHCARE, INC.,**<br>*a Delaware corporation,*<br>101 East State Street<br>Kennett Square, Pennsylvania 19348<br><br>**Serve:** CSC Lawyers Incorporating<br>Service Company<br>7 St. Paul Street Suite 820<br>Baltimore, Maryland 21202<br><br>*Defendant.* | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Elizabeth M. Ramani ("Ramani"), hereby files her Complaint against Defendant, Genesis Healthcare, Inc. ("Genesis), for all relief available to her under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, *et seq*. ("SOx"), and Maryland law in excess of $75,000 (excluding interests and costs), including preliminary and permanent injunction, compensatory damages, consequential damages, punitive damages, attorneys' fees and costs, and any other form of relief, however denominated, at law or equity, available to Ramani arising out of

Genesis's willful and malicious disregard of Ramani's lawful rights and privileges, and states:

## JURISDICTION, VENUE, AND PARTIES

1. This Court has subject-matter jurisdiction over this action under 28 U.S.C § 1331 because this action arises under the laws of the United States.

2. This Court has subject-matter jurisdiction under 28 U.S.C § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interests and costs.

3. This Court has personal jurisdiction over Defendant pursuant to Maryland Code, Courts & Jud. Proc. § 6-102 and § 6-103. Defendant has sufficient contact with Maryland to satisfy the minimal requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

4. Venue is proper in this action under 28 U.S.C. § 1391(b) because all of the events and omissions giving rise to Ramani's claims occurred in Montgomery County, Maryland.

## CONDITIONS PRECEDENT

5. Conditions precedent to the filing or maintenance of this action, if any, have been satisfied by Ramani, have been waived by Genesis, or are otherwise excused.

6. On May 19, 2017, Ramani filed a Whistleblower Complaint in the United State Occupational Health and Safety Administration ("OSHA") of the United States Department of Labor.

7. OSHA did not issue any decision on Ramani's Whistleblower Complaint.

**FACTS**

8. Elizabeth M. Ramani is licensed in Maryland as a Speech-Language Pathologist. She resides at 13504 Champions Way, Germantown, Maryland 20874 with her three sons, all minors.

9. Ramani has several years' experience as a manager in a rehab setting, much of which she gained through a long, successful career with Genesis.

10. Genesis is a publicly-traded, nationwide medical rehab and treatment center, with locations throughout the mid-Atlantic, including Maryland. Genesis derives a substantial part of its revenue from Medicare/Medicaid (through the United States Center for Medicare & Medicaid Services or "CMS"). As a result, it is Genesis's duty under federal law to train its staff on proper documentation of patient treatment for reporting the same to CMS for reimbursement by the United States or a Medicaid-participating state, such as Maryland.

11. Ramani began working for Genesis in August 2007. She worked for Genesis consistently, albeit with different hours per week, until Genesis fired her on November 22, 2016.

12. Prior to August 8, 2016, Nicole Hoenig Nicole Hoenig, Clinical Operations Area Director of Area 27 ("Hoenig"), asked Ramani to begin work at Genesis's Ballenger Creek Center in Frederick, Maryland, with a new title, "Director of Rehab."

13. On or about August 8, 2016, Ramani commenced work at the Ballenger Creek Center. Ramani's direct supervisor there was Diane Michaud ("Michaud"), Senior Director of Rehab at Genesis. From time to time, as described herein, Ramani also reported, with or without Michaud, as required by Genesis, to: (a) Michelle Southerly, Regional Vice President of the Eastern Territory "R4") ("Southerly"); (b); Deborah Pence, Genesis's Health Care Compliance Director ("Pence"); and (c) Meredith Shansky, Human Resources Manager for Genesis ("Shansky").

14. Upon Ramani's start at Ballenger Creek Center, Michaud advised Ramani that Ramani's most important job was to audit the performance of Michelle Baldwin ("Baldwin"), whom Michaud had commenced auditing before Ramani was assigned to the Ballenger Creek Center.

15. Baldwin was/is a physical therapist working for Genesis at Ballenger Creek Center.

16. During the next several weeks, Michaud and Hoenig pressured Ramani to complete her audit of Baldwin and present it to her as soon as possible.

Ramani complied, even though she did not have a good deal of time to audit Baldwin.

17. On or about August 17, 2016, Ramani presented a Performance Improvement Plan to Baldwin. Ramani and Baldwin were in Ramani's office in the Ballenger Creek Center. Michaud was present by phone.

18. Michaud did most of the talking in the meeting with Baldwin on August 17, 2016.

19. The meeting did not go well. Baldwin became angry.

20. Following the meeting, Michaud instructed Ramani to continue to audit Baldwin. Michaud directed Ramani specifically to email Michaud every day with a list of orders or other documents that Baldwin was expected to complete for billing to CMS. Michaud directed Ramani to "keep very good data" on Baldwin.

21. Ramani performed as directed. For a period of weeks, Baldwin threatened Ramani that Baldwin intended to "call corporate compliance and fight all of this." Baldwin repeatedly advised Ramani, Hoenig, Michaud, and Shansky that Baldwin was going to "blow the whistle" on Genesis because of its failure to follow Medicare/Medicaid rules and guidelines. But Baldwin's capacity as whistleblower was not news to Hoenig, Michaud, or Shansky because, prior to August 8, 2016, they knew that Baldwin was a potential whistleblower – that is why they assigned Ramani to audit Baldwin and to set up Baldwin for termination.

22.     On or about September 14, 2016, as directed by her bosses, Ramani completed a Conditions, Actions, and Needs ("CANS") report on Baldwin, and delivered the report to Hoenig.  The CANS report on Baldwin showed extensive failure to report her work and time accurately over a long period of time.

23.     That day Hoenig delivered Ramani's CANS report on Baldwin to Shansky and Michaud.

24.     Shansky responded to Hoenig, Michaud, and Ramani:

> This is fine.  I am already anticipating Michelle's reaction so I want to make sure we have back up to show her what she is doing or not doing.  I want to make sure we are giving her specific examples.  I want to show the doc list she was given to complete, was it or wasn't it completed, what was her treatment time scheduled for those days and what were her actual hours on sites those day, if that makes any sense.

Ramani responded to Shansky:

> how many days worth would you like me to share with you in terms of hours and in terms of docs due?? Do you want me to send you a recent audit I did, along with recent emails indicating which documents to complete?

To which Shansky replied:

> Elizabeth, we need information showing why we couldn't close out for EOM Aug, Week one Sept and also this week.  Those are the items that we need to have readily available.  I will go through my emails tomorrow, you do the same and we will talk about it tomorrow.

25.     Michaud, Hoenig, and Shansky decided to present the CANS, through Ramani, on Saturday, September 17, 2016.

26. Ramani went to her office on her day off, and met with Baldwin in Ramani's office, with Michaud, Hoenig, and Shansky participating by phone.

27. Ramani delivered the CANS report to Baldwin, who responded violently, cursing, yelling, crying, and threatening to have everyone fired for participating in fraud. Baldwin referred to Shannon Nye, a Genesis rehab director who everyone understood had been fired from Genesis on allegations of fraud: "You know Shannon Nye," Baldwin yelled, "she got fired and I'm going to make sure the same happens to you all." The call lasted 40 minutes.

28. Later that afternoon, Ramani sent an email to Shansky, Michaud, and Hoenig, stating:

> Hi everyone,
> Just an FYI she now says that I am out to get her, that it's my fault all of this happened. She thinks we are penalizing her for docs due for days she's not here and not listening to my explanations. She says I'm not supportive and that I will "pay for this." She also said "Shannon was unsupportive of me, and now look where she is. " She says she's going to get me fired for HIPPA violation (talking to my son on the phone in the past ) etc etc. Very angry, very aggressive and is threatening me.

29. That evening, Hoenig responded to Ramani:

Hi, Elizabeth. That was clearly a very difficult conversation for everyone.

I am going to call Michelle S[outherly] on Monday and give her an explanation of what happened so she is aware.

She cannot retaliate against you – we are holding her accountable like we would anyone else in the same position.

> On my end, it you did a great job of explaining the facts to her. I was proud of how calm you sounded.
>
> I know it was challenging.
>
> Thank you for taking the time out of your day off to address this.

30. Following the September 17, 2016, CANS meeting, Baldwin left Genesis on partial leave, ostensibly for medical reasons.

31. On October 12, 2016, Ramani wrote the following email to Michaud and Hoenig:

> Good morning Niki Diane,
> Michelle is supposed to be starting again on the 17th from what Chandra had said, however I'm waiting to hear about her hours per week and if there are any restrictions.
> I'm honestly very concerned with her returning – she was very threatening to me the day of the CANS call, she becomes hysterical and hostile at times. She's does not appear all together stable. This could affect patient care and also Team morale (which I'm working on building up). I'm guessing she will likely say negative things about management and corporate to the rest of the staff. She called me the other day (over the weekend) and I did not answer the phone. She did not leave a message
>
> Is there anything we can do, aside from closely monitoring her?
>
> She could potentially be a safety risk.

Hoenig responded by email to Ramani and Michaud, stating: "If there are additional concerns about this, please call me rather than email."

32. Baldwin returned to the Ballenger Creek Center on or about October 15, 2016.

33. Baldwin then had a call with Pence.

8

34. Unbeknownst to Ramani, Genesis determined that, to keep Baldwin quiet, Genesis would find cause to fire Ramani, whom Genesis had sent into Ballenger Creek to find cause to fire Baldwin.

35. Following the call, Ramani was advised that, on October 28, 2016, Ramani would have a call with Pence, Shansky, and "Area Directors" for Genesis.

36. The call on October 28, 2016, occurred as scheduled and lasted about an hour. The questions that Pence posed to Ramani were designed to find any flaw, however immaterial, with Ramani's work. For example, Pence asked Ramani: "Do you have a fire extinguisher in the kitchen area of the gym? and "How do you decide how many minutes to schedule a patient for?"

37. In the first week of November 2016, Genesis required Ramani to work at a different location, a Genesis facility known as "Glade Valley." Pence advised Ramani that this was necessary so that Pence and others could interview Ramani's co-workers in Ramani's absence.

38. On Friday, November 4, 2016, Southerly called Ramani and told Ramani that Southerly was on her way to see Ramani that afternoon. When Southerly arrived, she entered Ramani's office and called Shansky. With Shansky on the phone, Southerly advised Ramani that Genesis was putting Ramani on "paid administrative leave" pending Genesis's investigation of Ramani. Shansky and Southerly gave no explanation for their decision to put Ramani on leave, only advising Ramani to "trust the process."

39. Ramani immediately complained to Southerly and Shansky, and claimed that they were scapegoating her to protect Genesis from Baldwin.

40. On Saturday, November 5, 2016, Ramani called Pence and demanded to know why Ramani was put on leave and why Baldwin was not put on leave. Pence responded: "Because it would be considered retaliatory." Ramani replied: "You are concerned about potential whistleblowing?" Pence replied: "Yes, that's true."

41. On November 7, 2016, Pence called Ramani. Ramani asked Pence: "What am I being accused of?" Pence replied: "This is an internal investigation and I can't discuss the substance of it. It's very common to have folks on administrative leave."

42. Ramani asked if she could have her lawyer participate. Pence: "Genesis policy is that we do not allow lawyers on calls. The process will not be long, will hopefully move forward by Thursday or Friday of this week. We will then decide the next course of action that should be taken."

43. Ramani stated repeatedly: "Why is it that I'm the only one being taken out of the picture? Why am I on paid admin leave? If you want this process to be fair, why is it that Baldwin and my bosses aren't on paid admin leave as well?"

44. Pence replied that it was a "team" decision for Ramani to be put on leave. Ramani replied: "I'm being ostracized, targeted, and discriminated against, I

have done nothing wrong, and that this was not okay, that there could be legal ramifications to this."

45. Pence replied: "I'm sorry you feel that way. I'll bring it up to my boss Janine Valdez, the VP of corporate compliance and maybe she can schedule a call with you."

46. Upon getting off the phone with Pence, Ramani wrote an email to Michaud, Hoenig, Southerly, Pence, Shansky, and William Root, an in-house lawyer with Genesis. Ramani stated:

> Good afternoon,
>
> I just got off the phone with Debbie Pence and unfortunately none of my concerns were addressed. The call was unsatisfactory and went in circles.
>
> When asked why I was the only person put on paid admin leave, she responded "it was a team decision" for the integrity of the investigation. Who was part of this team decision and why am I being targeted?
>
> I would kindly and greatly appreciate some answers regarding this major concern. I am the one who is now being retaliated against, and it is completely unacceptable.

47. On or about November 8, 2016, Jeanine Valdez, Vice President of Corporate Compliance at Genesis, called Ramani and stated: "We received allegations. We have to conduct interviews. This is a rote company process that we follow by putting employees on administrative leave. You are on admin leave for your own protection. Once we review the interview answers and documents, we

will interview you again. The interview will be conducted by two parties. I ask you to please trust the process. The decision to put you on leave was made by the facts and allegations. It's impossible for you to know what's going on behind the scenes regarding the case. If you want your lawyer involved then your lawyer will have to get in touch with our lawyer. Sorry you feel that way, it is not meant to ostracize you."

48. On November 10, 2016, Ramani had a two-hour long phone interview with Lisa Durham ("Durham") from Genesis Human Resources and Jeffery J. Caliari ("Caliari"), Compliance Director for Genesis. Durham recorded the interview, and Caliari asked all the questions. At the start of the call, Caliari stated that: "This call is in response to concerns of possible inappropriate practices at Ballenger Creek." He further stated that the call was "confidential" and that Ramani was "not to share information until the investigation is over," because Genesis is still "gathering information." He said: "There are no conclusions at this point, and Genesis has a 'non-retaliation' policy."

49. At the end of the call with Caliari and Durham, Ramani continued to ask why she was being investigated and why Baldwin was not being investigated.

50. On November 21, 2016, Ramani had a call with Southerly and Shansky.

51. Southerly reported to Ramani that, because the investigation of Ramani had demonstrated that Ramani had failed to have sufficient eye-contact

with her staff, Ramani had violated Genesis's Code of Conduct, which warranted termination.

52. On November 22, 2016, Shansky delivered a letter to Ramani terminating her employment with Genesis. Shansky letter states: "Your termination is based on a violation of the GRS Policies and Procedures HR Policy GRSHR 300 Code of Conduct/Performance Standards Adherence."

53. Prior to November 2016, Ramani had not had even a warning from Genesis.

54. Prior to November 22, 2016, Ramani had never heard of the Genesis "Code of Conduct," and had received no training in it.

55. Ramani promptly complained to Genesis regarding her termination. By letter dated December 16, 2016, Ramani made demand on Genesis, including identifying scores of employees who will attest Ramani's blemish-free career at Genesis.

56. On information and belief, Baldwin continues to work for Genesis.

57. On June 16, 2017, the United States Justice Department announced that Genesis will pay the federal government $53,639,288.04, including interest, to settle six federal lawsuits and investigations alleging that companies and facilities acquired by Genesis violated the False Claims Act by causing the submission of false claims to government health care programs for medically unnecessary therapy and hospice services, and grossly substandard nursing care.

58. Genesis terminated Ramani in an attempt to delay and/or to deter Baldwin, a whistleblower whom Genesis had been watching since long before Genesis placed Ramani at Ballenger Creek to audit Baldwin, from coming forward with information regarding fraud in patient timekeeping and reporting under Medicare and/or Medicaid, including information that Genesis knew would threaten Genesis's pending settlement with the Department of Justice.

59. At the time that Ramani was reporting to her supervisors on Baldwin, Ramani reasonably believed that Baldwin had information on fraudulent patient timekeeping and reporting by Genesis under Medicare and/or Medicaid, which reporting Ramani knew Genesis made through the United States mail and/or electronically in the United States.

60. At the time that Ramani was reporting to her supervisors on Baldwin, a reasonable person in Ramani's position would have believed that Genesis had committed or was committing mail or wire fraud in connection patient timekeeping and reporting under Medicare and/or Medicaid.

## COUNT I
## RETALIATION UNDER SOx,
## 18 U.S.C. § 1514A *et seq.*

61. Ramani incorporates by reference and restates here her allegations in paragraphs 1 through 60 above.

62. Genesis is a publicly traded company within the meaning of SOx.

63. Ramani engaged in protected activity under SOx by, *inter alia,* providing information to one or more of her supervisors at Genesis, causing information to be provided to one or more of her supervisors at Genesis, and/or otherwise assisting Genesis, through Ramani's supervisors, in investigating Baldwin in an attempt by Genesis aimed at discrediting Baldwin to prevent Baldwin from reporting conduct that constituted mail and/or wire fraud by Genesis in its compliance with CMS.

64. Ramani subjectively believed that the Genesis conduct that Ramani learned from Baldwin in Ramani's investigation of Baldwin violated federal mail and/or wire fraud, and constituted a fraud against Genesis's shareholders.

65. Ramani's belief that Genesis was engaged in federal mail and/or wire fraud, and/or fraud against Genesis's shareholders, was objectively reasonable.

66. Genesis knew or suspected that Ramani was engaged in protected activity.

67. Ramani's conduct was at all times lawful.

68. Ramani suffered an adverse action in her employment with Genesis, including discharge from employment with Genesis.

69. Ramani's protected activity was a contributing factor in Genesis's decision to suspend and/or discharge Ramani from employment with Genesis, and otherwise to discriminate against Ramani in her employment with Genesis.

## COUNT II
## INTENTIONAL MISREPRESENTATION

70. Ramani incorporates by reference and restates here her allegations in Paragraphs 1 through 60 above.

71. Genesis induced Ramani to move to its Ballenger Creek facility through misrepresentation, including by failing to advise Ramani that Genesis offered Ramani the job at Ballenger Creek for the sole purpose of "auditing" Baldwin for the purpose of preventing Baldwin from reporting on Genesis to federal authorities.

72. In reliance on Genesis's promises of job growth, including through the title of "Director," at the Ballenger Creek facility, Ramani abandoned her stable job at Genesis to work at Ballenger Creek.

73. Genesis never advised Ramani that the purpose of relocating Ramani to the Ballenger Creek facility was to "audit" Baldwin.

74. Ramani conducted the "audit" of Baldwin as instructed by Genesis.

75. However, when Genesis determined that Ramani's "audit" would not achieve removal of Baldwin or Baldwin's silence, the secret result Genesis had sought, Genesis fired Ramani.

76. Genesis engaged in a pattern of willful avoidance of, and misrepresented adherence to, the terms of its promises to and agreements with Ramani, in bad faith, with malice towards Ramani, with false intent to perform the

terms of the agreements in any way that would be reasonable or that would accommodate the lawful and reasonable interests of Ramani, at all times keeping Ramani in the dark about Genesis's true intentions.

77.     Genesis engaged in this pattern knowing that it was false and intending that Ramani rely on its false or fraudulent demonstration of adherence to its promises to and agreements with Ramani.

78.     Ramani relied on Genesis's stated and implied adherence to the terms of Genesis's promises to and agreements with Ramani to Ramani's detriment, including damages in excess of $75,000, exclusive of interest and costs.

79.     Genesis's misrepresentations and omissions regarding its intent not to perform promises to or agreements with Ramani were outrageous, grossly fraudulent, or reckless toward Ramani's lawful interests.

80.     In misrepresenting and omitting material facts concerning its false promises to Ramani, Genesis conducted itself (i) with evil motive, actual malice, deliberate oppression toward Ramani, (ii) with intent to injure Ramani or her interests, and/or (iii) in willful disregard for Ramani's lawful rights and privileges.

**WHEREFORE**, Ramani respectfully requests that this Court enter judgment in favor of Ramani and against Genesis, granting:

> A.     Appropriate declaratory and other injunctive and/or equitable relief, including reinstatement, back pay, and restoration of all benefits;

B. Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

C. All economic losses on all claims allowed by law;

D. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

E. Pre- and post-judgment interest at the lawful rate;

F. Attorneys' fees, and costs and expenses, as allowed by law; and

G. Any further relief that this court deems just and proper, and any other relief as allowed by law.

## JURY DEMAND

Ramani demands a trial by jury of all issues triable as of right by jury.

Dated:  November 20, 2019  
Gaithersburg, Maryland

Respectfully Submitted,

**ROTBERT BUSINESS LAW P.C**.

By:  /s/ Mitchell J. Rotbert  
Mitchell J. Rotbert  
Bar No. 13471  
8937 Shady Grove Court  
Gaithersburg, Maryland 20877  
Phone: (240) 600-6467  
Fax: (888) 913-2307  
mitch@rotbertlaw.com  
*Counsel for Elizabeth M. Ramani*